IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 3:20-cv-187 |
| Plaintiff, | | |
| v. | | |
| YALE NEW HAVEN HOSPITAL, INC. | | |
| Defendant. | | |

## NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, as amended, ("ADEA") and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of age, to redress interference with rights protected under the ADA, to stop medical examinations in violation of the ADEA and ADA, and to provide appropriate relief to Dr. Irwin Nash and other aggrieved employees and individuals who were adversely affected by such practices. Specifically, as alleged with greater detail below, Defendant Yale New Haven Hospital, Inc., ("YNHH") has adopted and implemented what it calls a "Late Career Practitioner Policy" ("the Policy"), that requires any individual age 70 and older ("age 70+") who applies for, or seeks to renew, medical staff privileges at YNHH to take both an ophthalmologic and a neuropsychological medical examination. Individuals and employees younger than age 70 are not subject to this requirement. By subjecting only age 70+ applicants to, and age 70+ employees of, YNHH to the Policy, YNHH violates the ADEA. By subjecting its employees to the Policy, YNHH

1

violates the ADA's prohibition against subjecting employees to medical examinations that are not job-related and consistent with business necessity. In addition, because YNHH medical staff privileges are a condition of employment as a clinical faculty member of the Yale School of Medicine and other local employers, the Policy interferes with the enjoyment of rights protected by the ADA of Yale School of Medicine employees and other local medical employees.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) and Section 707 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and § 2000e-6, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  This action is also authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.

2. The employment practices alleged to be unlawful were and continue to be committed within the jurisdiction of the United States District Court for the District of Connecticut.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Titles I and V of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections

706(f)(1) and (3) and Section 707 of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and § 2000e-6. The Commission is also the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. Defendant Yale New Haven Hospital, Inc., is a private, not-for-profit acute care hospital with two campuses in New Haven, Connecticut. Defendant is the teaching hospital of Yale School of Medicine, a part of Yale University.

5. At all relevant times, Defendant Yale New Haven Hospital, Inc., has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7), and within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7. At all relevant times, Defendant has continuously been doing business in the state of Connecticut and has continuously had at least 20 employees.

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Dr. Irwin Nash filed a charge with the Commission alleging violations of the ADEA and ADA by Defendant.

9. On August 15, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADEA and ADA were violated with respect to Dr. Nash and a class of aggrieved individuals and inviting Defendant to join with the

Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On October 11, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. Defendant is the teaching hospital of Yale Medical School ("YSM"). Defendant has had a longstanding and close affiliation with Yale University ("Yale") and its medical school that dates to the founding of YNHH in 1826. The affiliation between Yale and YNHH was first memorialized in a written agreement in 1913 and a subsequent affiliation agreement was entered into between Yale and YNHH on March 22, 1965. Through the affiliation, YSM and YNHH serve as components of an integrated academic medical center and share a history of clinical care; care for the uninsured, underinsured and indigent; teaching; research; and community and patient care programs dating back almost 200 years, and have earned national and international reputations for teaching, research, and clinical services. YSM and YNHH operate under an approximately 100-page Affiliation Agreement that integrates fully the operations of the two

entities. YSM has a large say in who heads each clinical department, and Dr. Nash himself supervises, and continues to supervise, numerous YNHH employees.

15. All YSM faculty with appointments, like Dr. Nash, in the clinical departments must obtain medical staff privileges at YNHH with appropriate clinical privileges.

16. At the time of initial appointment and every two years thereafter, all physicians and other practitioners who are members or affiliated members of the YNHH Medical Staff undergo a thorough evaluation of their skills and competence. In this process, consideration is given to each individual's ability to exercise the privileges requested in the hospital setting with reasonable skill and safety. Privileges are granted following appropriate evaluation through Medical Staff leadership, the Medical Staff's Credentials Committee and its Executive Committee within all operating peer review processes. The YNHH Board of Trustees is ultimately responsible for acting on the recommendations of these groups to approve appointment and privileges.

17. This ongoing evaluation may identify patterns, outcomes, complications, behaviors or other indicators associated with the practice of a specific individual which suggest the need for focused evaluation in accordance with YNHH's Policy regarding "Focused Professional Practice Evaluation."

18. Since on or around March 2016, Defendant has imposed an additional term and condition on the granting of medical staff privileges only for those age 70 and above. Defendant has done so through what it calls its "Late Career Practitioner Policy" ("the Policy").

19. The Policy requires prospective members or members of Defendant's medical staff who are age 70 or over to undergo a neuropsychological screening evaluation and basic ophthalmologic exam at the time of initial appointment or beginning with the first re-

5

appointment, and for every re-appointment thereafter that occurs after reaching the age of 70. The Policy applies not only to physicians but to dentists, podiatrists and certain advanced practice providers who require medical staff privileges at Defendant.

20. YNHH and YSM employees under age 70 requiring medical staff privileges are not subject to the Policy.

21. Those subject to the Policy are subjected to it solely because of their age and without any particularized suspicion that their eyesight or neuropsychological ability may have declined.

22. As of April 2019, Defendant had applied the Policy to 145 individuals, all of them age 70 and older. Of these, 14 were listed as "Borderline deficient;" 1 listed as "Deficient;" 7 as having "Failed;" 5 as "N/A" because they refused testing and either resigned or changed their status; 80 as having "Passed;" and 38 as having "Qualified Passed." Of these 145, 21 have since had the neuropsychological testing administered a second time; Defendant lists all but one of these as having "Passed" or "Qualified Pass." The lone individual not listed that way is listed as "Need to have a discussion regarding modifying his duties to simple coverage because of his findings."

## Claim Under the ADEA

23. In passing the ADEA, Congress explicitly found and declared that "the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons."

24. As a result, the ADEA makes it unlawful, among other things, for an employer

   i. to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

    ii.  to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

25. By adopting the Policy and applying it only to those age 70 and above, Defendant has subjected Dr. Nash, who passed the examinations, and other employees to the stigma of being singled out because of their age and to unlawful discrimination and classification of applicants and employees in violation of the ADEA.

26. The effect of the practices complained of above has been to deprive Dr. Nash and a class of applicants and employees age 70 and above of equal employment opportunities and otherwise to affect adversely their status as applicants or employees because of their age.

27. The unlawful employment practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## Claims Under the ADA

### A.  Medical Examination

28. The ADA states that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. §12112(d)(4)(A).

29. The Policy's ophthalmologic and neuropsychological exams are medical examinations under the ADA, and their use on Dr. Nash and other employees solely on the basis of their age violates the ADA.

30. The unlawful employment practices complained of above were intentional.

31. The unlawful employment practices complained of were done with malice or with reckless indifference to the federally protected rights of Dr. Nash and all similarly situated individuals.

### B. Interference with Rights Protected By the ADA

32. The ADA makes it unlawful to "interfere with any individual in the exercise or enjoyment of … any right granted or protected by [the ADA].

33. Under the ADA, an employee has the right to enjoy employment free from unlawful medical examinations.

34. By subjecting Dr. Nash and other employees of YSM (and employees of other employers) whose employment with YSM (and other employers) requires the receipt and maintenance of medical staff privileges at YNHH to medical examinations under the Policy, Defendant has unlawfully interfered with these employee's rights under the ADA.

35. The unlawful employment practices complained of above were intentional.

36. The unlawful employment practices complained of were done with malice or with reckless indifference to the federally protected rights of Dr. Nash and all similarly situated individuals.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of age.

B.     Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals 70 years of age and older, and which eradicate the effects of its past and present unlawful employment practices.

C.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from utilizing the Policy.

D.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from interfering with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right protected by the ADA.

E.     Grant a judgment requiring Defendant to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to individuals whose wages are being unlawfully withheld as a result of the acts complained of above.

F.     Order Defendant to make whole all individuals adversely affected by the unlawful practices described above, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to instatement, reinstatement, provide front pay in lieu of reinstatement, or otherwise make whole individuals denied employment because of their age.

G.     Order Defendant to make whole Dr. Nash, and all others similarly affected, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H. Order Defendant to pay Dr. Nash and all others similarly affected punitive damages for its malicious and reckless conduct described above in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs of this action.

Dated: February 11, 2020

Respectfully submitted,

Sharon Fast Gustafson
General Counsel

James L. Lee
Deputy General Counsel

Gwendolyn Y. Reams
Associate General Counsel

  /s/ Jeffrey Burstein
Regional Attorney
Jeffrey.Burstein@eeoc.gov


  /s/ Markus L Penzel
Markus L. Penzel (ct03381)
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Boston Area Office
John F. Kennedy Federal Building
Room 475
Boston, MA 02203-0506
Tel: (617) 565-3193
Fax: (617) 565-3196
Markus.Penzel@eeoc.gov