IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | Civil Action No. 3:20-cv-187 (VAB) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YALE NEW HAVEN HOSPITAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STIPULATED ELECTRONIC DISCOVERY AGREEMENT

Pursuant to Federal Rule of Civil Procedure 26, Plaintiff Equal Employment Opportunity Commission ("EEOC") and Defendant Yale New Haven Hospital, Inc. ("YNHH"), parties in the above-captioned matter (collectively, "The Parties" and each a "Party"), by their respective counsel, stipulate and agree that the following stipulation shall govern the search and production of Electronically Stored Information ("ESI") in this matter (the "ESI Stipulation").

## SCOPE

1.      This ESI Stipulation shall govern the production of documents and ESI, as described in Federal Rules of Civil Procedure 26, 33, and 34.

2.      The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

3.      Electronic discovery will be limited to documents and ESI in the Parties' custody, possession, or control, created on or after January 1, 2015.

4.      The Parties agree to meet and confer to identify those custodians whose documents and ESI should potentially be preserved in response to discovery.

64981201v.1

5.      The Parties agree to meet and confer to identify reasonably accessible and potentially not reasonably accessible custodial and non-custodial sources of documents and ESI.

6.      The Parties agree to meet and confer regarding the use of electronic search terms and other technologies to help identify potentially relevant documents and ESI, if appropriate.

## DOCUMENT PRODUCTION

7.      Production Format.  Documents and ESI derived from email and other electronically created files (*e.g.* Microsoft Office files, PDF's) will be produced as Bates-labeled single page TIFF images, as described in Exhibit 1.  Un-redacted spreadsheets, including Microsoft Excel files, will be produced in their native format.  Exports from structured database systems, including relevant personnel and payroll systems, will be produced in either Excel (as a primary or preferred format), or sortable .csv or delimited text format (as a secondary choice).

8.      Producing Party Right to Object to Production Format.  Each Party reserves the right to object to production of documents in the format specified herein to the extent that production in such format is impracticable or unreasonably burdensome or expensive. In this event, the parties will meet and confer on reasonable alternatives for production of particular ESI sourced material.

9.      Metadata.  The Parties agree to produce the ESI metadata fields identified in Attachment 1 Exhibit 1.

10.     Load file Format.  The Parties agree on the load file specifications provided for in Exhibit 1.

-3-

11.  Extracted Text.  All documents and ESI produced by The Parties will be accompanied by searchable text files or the text contained in the produced documents must be searchable through Optical Character Recognition ("OCR").  The accompanying text files or extracted text should include all un-redacted text within a document.

12.  Structured Databases.  The Parties agree to meet and confer to agree upon the production of data from structured databases in existing report formats, or report formats that can be developed without undue burden, if applicable. The preferred primary format of production for structured database information will be Microsoft Excel tables, with delimited text as a secondary option.

13.  De-Duplication.  The parties agree that the parties shall make good faith efforts to globally de-duplicate Custodian ESI to the extent that it is possible, meaning that only one copy of a document may be produced even if the same document is within other Custodians' ESI; however, all custodians must be provided for each duplicate document, to the extent available.

14.  Encrypted Documents.  The Parties will make reasonable efforts to ensure that documents and ESI produced in native form are decrypted (or that passwords are supplied).

**MANAGEMENT OF ATTORNEY-CLIENT AND WORK PRODUCT PROTECTION**

15.  The Parties agree that the production of communications, documents or information ("Privileged Material") protected by the attorney-client privilege, work product doctrine, or any other privilege or protection from disclosure, whether inadvertent or otherwise, is

-3-

not a waiver of the privilege or protection from discovery in this case or in any other

federal or state proceeding.

16.     Upon written notification from the producing party to the receiving party identifying

Privileged Material, the receiving party shall not review the disclosed Privileged Material

in any respect; shall within 10 days, segregate the Privileged Material (including any and

all work-product containing such Privileged Material); shall take reasonable steps to

retrieve such Privileged Material if the receiving party disclosed it before being notified;

and shall make no further use of such Privileged Material (or work product containing

such Privileged Material). The producing party shall, within 5 days of notifying the

receiving party of the material, provide the receiving party with a detailed privilege log

for the inadvertent production. The privilege log will include, for each document

identified by the producing party, the privilege asserted, the basis for the privilege, the

names of the parties involved (e.g., author, recipient(s)), and their roles. If the receiving

party wishes to dispute the claim of privilege, it may file a motion with the Court under

seal within ten (10) days of receiving the privilege log. The receiving party will be

provided with an additional ten (10) days to file a motion if the producing party identifies

more than 100 documents in its privilege log. Otherwise, within the same 10-day period,

for any documents for which the receiving party is not disputing the claim of privilege,

the receiving party shall (a) return the materials (including all copies thereof ) to the

producing party; or (b) destroy the materials (including all copies thereof) and confirm in

writing to the producing party the destruction of such materials, including all later created

excerpts, summaries, compilations, and other documents or records that include,

communicate, or reveal the information claimed to be privileged. The information in

64981201v.1

dispute shall remain sequestered until the Court rules on the motion or the parties agree otherwise. The sequestered information will then be returned, destroyed, or released from sequestration in accordance with the Court's direction.

17.     If the receiving party receives documents, ESI or other forms of information from the producing party that, upon inspection or review, potentially appears, in any respect, to contain or constitute Privileged Material, the receiving party shall immediately stop review of such information, promptly segregate the Privileged Material (including any and all work-product containing such Privileged Material); shall take reasonable steps to retrieve such Privileged Material if the receiving party disclosed it before being notified; and shall make no further use of such Privileged Material (or work product containing such Privileged Material), and identify the Privileged Material to the producing party. The producing party will then have 14 days to notify the receiving party whether it wishes to assert a claim of privilege with respect to the identified material. If the producing party claims that the material is privileged, then it shall provide a privilege log as required under Paragraph 15 of this agreement and all of the other procedures of that paragraph shall apply. A Party returning produced Privileged Material, however, may thereafter seek reproduction of any such documents pursuant to applicable law.

18.     The Parties agree that this portion of the ESI Stipulation shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

## **OTHER**

19.     This ESI Stipulation shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

64981201v.1

-6-

20.     Nothing in this ESI Stipulation shall be interpreted to require disclosure of irrelevant

        information or relevant information protected by the attorney-client privilege, work-

        product doctrine, or any other applicable privilege or immunity, or to limit a party's right

        to conduct a review of documents or ESI for relevance, responsiveness and/or

        segregation of privileged and/or protected information before production, irrespective of

        the electronic search terms or other technologies used to identify potentially relevant

        documents or ESI.  The Parties do not waive any objections as to the production,

        discoverability, admissibility, or confidentiality of documents and ESI.

21.     The process for identification, review, and production of ESI will consist of loading of

        ESI into a review platform and may consist of any of the following processes selected by

        the producing party:  (1) the application of file type, date, and other metadata filters; (2)

        the use of search terms; (3) deduplication of identical files; (4) the use of analytics

        technologies, including email threading, clustering, categorization, and technology

        assisted review / predictive coding / continuous active learning; and (5) attorney review

        for responsiveness.

22.     Counsel executing this ESI Stipulation warrant and represent that they are authorized to

        do so on behalf of themselves and their respective clients.

//

//

//

//

//

//

64981201v.1

-7-

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD

DATED:  July 29, 2020


/s/ Markus Penzel
Markus L. Penzel
U.S. Equal Employment Opportunity
Commission
33 Whitehall St., Fl. 5
New York, NY 10004
212-336-3698

/s/ Christopher J. DeGroff
Christopher J. DeGroff (admitted pro hac vice)
Shana Madigan (admitted pro hac vice)
Stephen R. Beiting (admitted pro hac vice)
Seyfarth Shaw LLP
233 S. Wacker Drive, Ste. 8000
Chicago, IL 60606
(312) 460-3476


/s/ Mary A. Gambardella
Mary A. Gambardella, (ct05386)
Joshua J. Wyatt (ct28916)
Wiggins & Dana LLP
One Century Tower
265 Church Street, 18th Floor
New Haven, CT 06508
(203) 498-4328

64981201v.1