UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    *Plaintiff*,<br><br>    v.<br><br>YALE-NEW HAVEN HOSPITAL, INC.,<br>    *Defendant*. | No. 3:20-cv-187 (VAB) |

**ORDER ON CASE MANAGEMENT PLAN**

The Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") has sued Yale-New Haven Hospital, Inc. ("YNHH" or "Defendant"), alleging that YNHH's "Late Career Practitioner Policy" (the "Policy"), which requires medical practitioners who are age 70 or older and who apply for or seek to renew hospital privileges at YNHH to complete ophthalmologic and neuropsychological examinations, violates the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). Compl., ECF No. 1 (Feb. 11, 2020).

As alleged, the Policy applies not only to YNHH employees, but also to other local medical professionals whose employers require them to obtain hospital privileges at YNHH as a condition of employment. *Id.* at 1–2. For example, the Yale School of Medicine ("YSM"), for which YNHH is the teaching hospital, requires clinical faculty to obtain privileges. *Id.* ¶ 15.

The EEOC alleges one claim under the ADEA and two claims under the ADA: that the Policy (1) subjects YNHH applicants and employees age 70 and older to unlawful discrimination and classification solely on the basis of age in violation of the ADEA; (2) impermissibly subjects YNHH employees age 70 and older to medical examinations solely on the basis of age in violation of the ADA; and (3) interferes with the rights of individuals 70 and older employed by

1

YSM (or other local employers) that require hospital privileges at YNHH as a condition of employment to exercise their rights under the ADA to be free from medical examinations. *Id.* ¶¶ 23–36.

The parties disagree as to the case management plan for this litigation and have requested the Court's intervention.

For the following reasons, discovery in this case will be divided into two phases: (1) Phase I will determine the employment status of any individuals affected by the Policy, after which summary judgment motions on this issue will be filed; and (2) Phase II will address whether the Policy violates either the ADEA or the ADA, to the extent necessary.

Consistent with this Order, the parties are ordered to meet, confer, and submit a revised Rule 26(f) report for the Court's consideration by **August 21, 2020**.

## I.      BACKGROUND

On June 17, 2020, YNHH moved for a discovery conference "to resolve a dispute concerning a critical element of the Rule 26(f) Report." Mot. for Disc. Conf., ECF No. 25 (June 17, 2020); *see also* Fed. R. Civ. P. 26(f) ("[T]he parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)" and must "submit[] to the court within 14 days after the conference a written report outlining the [proposed discovery] plan."). The Court held a discovery conference on June 24, 2020. Minute Entry, ECF No. 30 (June 24, 2020).

The parties have now each submitted a proposed Rule 26(f) report, as well as memoranda in support of their respective proposed case management plans. EEOC's Local Rule 26(f) Report, ECF No. 28 (June 22, 2020) ("EEOC Proposed Plan"); Pl.'s Mem. in Supp. of Proposed Case Management Plan, ECF No. 28-1 (June 22, 2020) ("EEOC Mem."); Resp. re Status Conf.,

ECF No. 31 (July 2, 2020) ("EEOC Suppl. Mem."); Def.'s Proposed Local Rule 26(f) Report, ECF No. 29 (June 22, 2020) ("YNHH Proposed Plan"); Br. in Supp. of Def's Proposed Discovery Plan, ECF No. 29-1 (June 22, 2020) ("YNHH Mem."); Resp. re Status Conf., ECF No. 32 (July 2, 2020) ("YNHH Suppl. Mem.").

The parties each propose that this litigation be conducted in stages, with Phase I discovery followed by Phase I dispositive motions, before beginning Phase II discovery and dispositive motions; but they differ as to the order of the stages.

EEOC's position is that Phase I should determine whether the Policy violates the ADEA and ADA "before individual issues of entitlement to relief and damages are considered." EEOC Proposed Plan at 9. In its view, "very limited discovery by either Party is needed concerning Aggrieved Individuals under EEOC's Phase I" because, "[f]or the ADEA and ADA medical examination claims to be ripe for decision, EEOC only needs to know that some employees of YNHH age 70 [or] over were or will be subjected to the Policy." EEOC Suppl. Mem. at 16.

The EEOC's Phase I discovery thus would "exclud[e] the issue of individual damages and employee status save for two issues:" 1) minimal discovery regarding four YNHH employees to whom YNHH already stated it had applied the Policy, and regarding others that YNHH might agree are employees subject to the Policy; and 2) discovery regarding "EEOC's contention that YSM clinicians' employment with YSM is conditioned on receiving privileges at YNHH." EEOC Proposed Plan at 9. At the end of Phase I, "the parties would file cross motions for summary judgment on the liability issues." *Id.* at 9–10. Then, if necessary based on the outcome of the liability phase, "Phase II would encompass discovery relating to the employment status of those Aggrieved Individuals whom Defendant asserts are not employees[.]" *Id.* at 10.

3

YNHH proposes, conversely, that litigation on the employment status of aggrieved individuals proceed first, and that Phase I therefore be "designed to identify the Aggrieved Individuals whose claims will be litigated in this action, and to determine if they are 'employees' under the ADEA and ADA." YNHH Proposed Plan at 7. The parties would file summary judgment motions "concerning the status of the Aggrieved Individuals as 'employees' under the ADEA and/or ADA." *Id.* at 8. Phase II would then be "designed to address whether the Policy violates the ADEA or ADA, to the extent those statutes apply after consideration in Phase I." *Id.* Damages would be addressed in Phase III. *Id.* at 9.

## II.  STANDARD OF REVIEW

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). Even more specifically, under the Federal Rules of Civil Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "[B]ifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue . . . ." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (citing *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996)).

## III.  DISCUSSION

The EEOC models its proposed case management plan on the bifurcation approach process outlined in *International Brotherhood of Teamsters v. United States* ("*Teamsters*"), 431 U.S. 324, 355 (1977). EEOC Mem. at 3.

In a lawsuit where the Government alleges that a defendant engaged in a pattern or practice of discrimination, the Government bears an initial burden of "demonstrat[ing] that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *Teamsters*, 431 U.S. at 360. A showing "demonstrating the existence of a discriminatory pattern or practice establishe[s] a presumption that the individual class members had been discriminated against." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875 (1984) (citing *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976)). "When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief." *Teamsters*, 431 U.S. at 361. Under *Teamsters*, therefore, "a pattern-or-practice suit is [generally] divided into two phases: liability and remedial." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001) (citing *Teamsters*, 431 U.S. at 360–62).

YNHH argues, however, that "*Teamsters*, and all of the other cases the EEOC cited in its original brief in support of its proposed approach, were pattern-or-practice cases in which the threshold issue of employment status was not contested. But as the EEOC clarified in oral argument, this is not a pattern-or-practice case, and the EEOC has conceded the issue of employment status is contested." YNHH Suppl. Mem. at 2.

The Court agrees.

Where, as here, the EEOC has brought not a "pattern or practice" case, but a lawsuit on behalf of aggrieved persons, with or without their consent, "it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all of the elements of their [ ] claims to obtain individual relief for them." *E.E.O.C. v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 929 (N.D. Iowa 2009) (discussing EEOC's obligations in a suit under Section 706

of Title VII, which permits the EEOC to bring claims on behalf of employees facing discriminatory). *E.E.O.C. v. Carolls Corp.*, No. 5:98-CV-1772 FJS/GHL, 2011 WL 817516, at *2 (N.D.N.Y. Mar. 2, 2011) ("Although the EEOC may bring suit [under Section 706 of Title VII] with or without the consent of the aggrieved individuals, it stands in the shoes of those aggrieved persons in the sense that it must prove all of the elements of their sexual harassment claims to obtain individual relief for them." (internal citation and quotation marks omitted));

As a result, courts can and have bifurcated discovery in order to determine first the employee status of aggrieved individuals as a threshold issue. *See, e.g.*, *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, No. SA-18-CV-404-XR, 2020 WL 1248263, at *1 (W.D. Tex. Mar. 16, 2020) ("allowing limited discovery and the filing of dispositive motions on the threshold issues of whether Plaintiff was an employee or an independent contractor and whether PICCS and VHS were his employers for purposes of Title VII"); *Shomo v. Junior Corp.*, No. 7:11-CV-508, 2012 WL 2401978, at *8 (W.D. Va. June 1, 2012) (permitting bifurcated discovery and first "limiting discovery to the issue of whether" defendant was an employer under Title VII); *Vondriska v. Cugno*, No. 8:07-CV-1322-T-24, 2010 WL 3245426, at *2 (M.D. Fla. Aug. 17, 2010) (recognizing that "the threshold issue of whether [Defendant] qualified as an employer under the [Fair Labor Standards Act] is a discrete legal issue that lends itself to bifurcated discovery and to a separate trial."); *Niland v. Buffalo Laborers Welfare Fund*, No. 04-CV-0187F, 2007 WL 3047099, at *1 (W.D.N.Y. Oct. 18, 2007) ("Because a determination on this issue in Defendants' favor would result in the dismissal of all the Title VII claims, the parties to this action sought bifurcation permitting discovery and dispositive motions regarding whether Defendants are employers under Title VII.").

Here, resolution of the issue of employee status could result in the dismissal of the EEOC's ADEA claim and ADA medical examination claim. And, because this case is not a pattern or practice lawsuit, and the *Teamsters* model for bifurcating trial could create a presumption that the Policy was discriminatory against all allegedly aggrieved individuals, that model is inappropriate here. *Cf. In re: W. Dist. Xerox Litig.*, 850 F. Supp. 1079, 1091 (W.D.N.Y. 1994) (rejecting *Teamsters* model where there was "insufficient evidence to allow . . . plaintiffs to proceed on a theory . . . that Xerox engaged in a pattern and practice of age discrimination," and concluding that "each [plaintiff's] case must be considered on its merits without the benefit of any presumption or inference created by the alleged pattern and practice of discrimination").

Accordingly, discovery first will address whether any aggrieved individuals are employees, who could bring these claims in their own right; the Court then will address any summary judgment motions on that issue; and to the extent necessary, subsequent discovery will address whether the Policy violates either the ADEA or the ADA.

### I.     CONCLUSION

For the reasons explained above, discovery in this case will be divided into two phases: (1) Phase I will determine the employment status of any individuals affected by the Policy, after which summary judgment motions on this issue will be filed; and (2) Phase II will address whether the Policy violates either the ADEA or the ADA, to the extent necessary.

Consistent with this Order, the parties are ordered to meet, confer, and submit a revised Rule 26(f) report for the Court's consideration by **August 21, 2020**.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of August, 2020.

                                                  /s/ Victor A. Bolden
                                                  Victor A. Bolden
                                                  United States District Judge