IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>       Plaintiff,<br><br>       v.<br><br>YALE NEW HAVEN HOSPITAL, INC.<br><br>       Defendant. | Civil Action No. 3:20-cv-187 (VAB) |

**JOINT REVISED RULE 26(f) REPORT OF PARTIES' PLANNING MEETING**

Pursuant to Local Rule 26(f), and the Court's August 8, 2020, Order (Doc. No. 34), Plaintiff Equal Employment Opportunity Commission ("EEOC") and Defendant Yale New Haven Hospital, Inc. ("YNHH" or "Defendant"), respectfully submit this report.

**Date Complaint Filed:**     February 11, 2020

**Date Complaint Served:**     Defendant, through counsel, accepted service on February 11, 2020

**Date of Defendant's Appearance:**   March 5, 2020

Pursuant to Fed. R. Civ. P. 16(b), 26 (f) and D. Conn. L. Civ. R. 16, a telephonic planning conference was held on June 16, 2020, and August 19, 2020.  The participants on the June 16 call were Markus Penzel for EEOC and Mary Gambardella and Christopher DeGroff for Defendant.  The participants on the August 19 call were Markus Penzel for EEOC and Mary Gambardella, Christopher DeGroff, Shana Madigan, and Joshua Wyatt for YNHH.

**I.     CERTIFICATION**

Counsel for each party, after client consultation, certifies that (a) they have discussed the

nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan.  Counsel for both parties further certify that they have met and conferred regarding the Court's Order dated August 8, 2020 (Doc. No. 34) and have jointly prepared this revised Report for the Court's consideration per that Order.

## II.   JURISDICTION

### A. Subject Matter Jurisdiction

The case against the Defendant presents a federal question.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

### B. Personal Jurisdiction

Defendant does not contest personal jurisdiction.

## III.   BRIEF DESCRIPTION OF CASE

### A. Claims of Plaintiff:

The EEOC alleges that Defendant has adopted and implemented what it calls a "Late Career Practitioner Policy" ("the Policy"), that requires any individual age 70 and older ("age 70+") who applies for, or seeks to renew, medical staff privileges at Defendant to take both an ophthalmologic and a neuropsychological medical examination. Individuals and employees younger than age 70 are not subject to this requirement. By subjecting only age 70+ applicants to, and age 70+ employees of, Defendant to the Policy, the EEOC alleges YNHH violates the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, as amended, ("ADEA").

The EEOC also brings two claims under Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a. First, EEOC alleges that

the Policy violates the ADA's prohibition against subjecting employees to medical examinations that are not job-related and consistent with business necessity. Second, EEOC alleges that, because Defendant's medical staff privileges are a condition of employment as a clinical faculty member of the Yale School of Medicine and other local employers, the Policy interferes with the enjoyment of rights protected by the ADA of Yale School of Medicine employees and other local medical employees. The EEOC alleges this claim does not require a finding that the individual is an employee of Defendant. The EEOC seeks compensatory and punitive damages under the ADA on behalf of the class of individuals subjected to the Policy and injunctive relief under both the ADEA and ADA.

**B. Defenses and Claims (Affirmative Defenses, Counterclaims, Third Party Claims, Cross Claims)(either pled or anticipated) of Defendant:**

Defendant denies the Policy violates the ADEA or ADA in any way, and asserts the following defenses:

1. Failure to State a Claim Upon Which Relief Can be Granted;
2. Failure to Sufficiently Exhaust Administrative Remedies;
3. Statute of Limitations;
4. All Acts Supported by Business Justification;
5. Failure to Sufficiently Mitigate Damages;
6. Testing Conducted Pursuant to the Policy Falls within the ADEA's Bona Fide Occupational Qualification Exception;
7. Lack of Malice, Willfulness, or Other Improper Motive; and
8. After-Acquired Evidence.

**C. Defenses and Claims of Third Party Defendant(s)**

Not applicable.

## IV. STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed:

1. Defendant is a private, not-for-profit acute care hospital with two campuses in New Haven, Connecticut.

2. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7), and within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

3. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

4. At all relevant times, Defendant has continuously been doing business in the state of Connecticut and has continuously had at least 20 employees.

5. Defendant is a party to an Affiliation Agreement with Yale School of Medicine ("YSM"), and its facilities are used for teaching purposes as a component of that agreement.

## V. CASE MANAGEMENT PLAN

### A. Initial Disclosures

Initial disclosures will be served 30 days after entry of the Court's Scheduling Order.

### B. Scheduling Conference

1. The parties do not request to be excused from holding a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

2. The parties prefer that a scheduling conference, if held, be conducted by telephone.

    C.  **<u>Early Settlement Conference</u>**

    1.    The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

    2.    The parties do not request an early settlement conference.

    3.    The parties prefer a settlement conference, when such a conference is held, with a magistrate judge.

    4.    The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

    D.  **<u>Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings.</u>**

    1.    Plaintiff should be allowed until a date 90 days from entry of the Scheduling Order to file motions to join additional parties and to file motions to amend the pleadings. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

    2.    Defendant should be allowed until a date 90 days from entry of the Scheduling Order to file motions to join additional parties and until a date 14 days from the date of any amended complaint to amend its pleadings. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

    E.  **<u>Discovery</u>**

    1.    Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R.

Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case" as a whole.

2.  Plaintiff's Position: Plaintiff needs information on the history of the Policy, the reasons for the Policy, the content of the neuropsychological examination, those affected by the Policy, the qualifications of those subject to the Policy, and the impact of the Policy on their employment with Defendant and/or their employment with employers other than Defendant. Plaintiff also needs information regarding the employment relationship with YNHH of those affected by the Policy, which includes, but is not limited to, YNHH's status as an integrated enterprise and or joint employer with the Yale School of Medicine and other entities, such as Yale New Haven Health and Northeast Medical Group.

3.  Defendant's Position: Defendant needs information regarding the Aggrieved Individuals' employer(s) at the time of the denial of their Defendant medical staff privileges, the employment relationship (if any) between the Aggrieved Individuals and Defendant, the impact of the Policy on the alleged Aggrieved Individuals' employment status, the Aggrieved Individuals' medical condition(s) and qualification and ability to perform their medical practice to the standard required by Defendant at the time their Defendant medical staff privileges were denied and thereafter, and the Aggrieved Individuals' alleged damages and efforts to mitigate any alleged damages.

4.  The parties anticipate that discovery will be needed on the following subjects (in either Phase I or Phase II):

   a. Whether Defendant is an "employer" under the ADA and ADEA, including the terms and conditions under which medical providers work at Defendant, the existence of remuneration or other substantial benefits provided to medical providers at Defendant, and the integration of the operations of Defendant, YSM, and other entities with YNHH;
   b. The history of the Policy;

    c. The reasons for the Policy;
    d. Defendant's efforts to ensure patient safety and the qualifications and competence of those given privileges;
    e. Those affected by the Policy and their qualifications;
    f. Whether there was any evidence, prior to the application of the Policy to an individual, that the individual lacked any of the qualifications necessary to practice at YNHH;
    g. The content of the neuropsychological examination;
    h. For any individual deemed to be an employee of YNHH, the impact of the Policy on his/her relationship with Defendant and other employers;
    i. Whether the EEOC's Aggrieved Individuals were qualified for the positions or opportunities that the EEOC claims were denied;
    j. The Aggrieved Individuals' alleged damages and efforts to mitigate any alleged damages; and
    k. Defendant's defenses as listed in its Answer.

5. Per the Court's Order dated August 8, 2020 (Doc. No. 34), holding that discovery in this case will be conducted in two phases (Phase I to determine the employment status of any individuals affected by the Policy; and Phase II to address whether the Policy violates either the ADEA or ADA, to the extent necessary), the parties submit the proposed revised discovery plan:

### Phase I - Defendant's status as an employer under ADEA and ADA

- This phase is designed to identify the Aggrieved Individuals regarding whom EEOC will seek judgment and relief in this action, and to determine if they are "employees" under the ADEA and/or ADA. The parties agree that this phase will include an exchange of written discovery requests, third party subpoenas, the production of documents including ESI to the extent relevant and proportional to Phase I discovery, and certain depositions by agreement of the parties or Order of the Court. The parties agree that Plaintiff will require a total of 3 depositions of YNHH, YSM, and Northeast Medical Group, related to Phase I issues, including the issues of integrated enterprise and joint employer. Plaintiff anticipates that it may require additional limited depositions on those issues, as well as of some of the following individuals: Aggrieved Individuals, whose numbers are currently not known, from whom EEOC will be unable to secure information voluntarily; and individuals who work with or supervise the work of these Aggrieved Individuals. Defendant reserves the right to challenge any such deposition depending on the scope and circumstances. The parties will meet and confer on any dispute(s), per the Court's rules.

- Within 45 days of the entry of the discovery schedule, Defendant shall provide the following in an Excel spreadsheet to EEOC with respect to any individual who has been subject to the Policy: 1) name and last known contact information (including home and business address, home and business telephone numbers, and personal and non-YNHH business email addresses to the extent known by YNHH); and 2) the non-privileged

7

- information categories included in Exhibit A to YNHH's June 12, 2019, submission to EEOC and for each additional neuropsychological examination given.[1] Defendant will supplement its initial production with the names and contact information of additional individuals who become subject to the Policy during Phase I of discovery, up to 90 days before the close of the Phase I discovery period.

- Plaintiff seeks permission to serve more than 25 Interrogatories in Phase I. Specifically, Plaintiff seeks permission to serve one interrogatory, each with up to 13 subparts corresponding to the 13 factors relevant to the determination of employment status (*United States v. City of N.Y.*, 359 F.3d 83, 92 (2nd Cir. 2004) (*citing Eisenberg v. Advance Relocation and Storage, Inc.*, 237 F. 3d 111, 113-114 (2nd Cir. 2000), for each individual identified by Defendant as having been subject to the Policy or who will be subject to the Policy prior to the close of Phase I discovery. Plaintiff also seeks permission to serve up to 20 interrogatories each concerning YNHH's relationship with Yale School of Medicine and the Northeast Medical Group. Defendant reserves the right to challenge any additional Interrogatories depending on the nature and scope of the requests. The parties will meet and confer on any proposed Interrogatories over these numbers, per the Court's rules, prior to bringing any dispute to the Court's attention.

- Within 90 days of receipt of the information disclosed in the Excel spreadsheet required above, the EEOC shall make its first identification of Aggrieved Individuals and supplement its Initial Disclosures accordingly. The EEOC will continue to identify additional Aggrieved Individuals (and supplement its Initial Disclosures) on a rolling basis. Identification of all alleged Aggrieved Individuals shall be completed no later than 60 days prior to the close of Phase I discovery, unless for good cause shown. Defendant reserves the right to challenge any such late identification, subject to meet and confer. In the event an extension is granted, the parties agree that Defendant shall have an additional 60 days to conduct discovery related to the additional Aggrieved Individual(s).

- All Phase I fact discovery shall be completed by:

  - Plaintiff's position: September 1, 2021. This extended time is necessary due to 1) the number of individuals subjected to the policy (145+) and the individualized nature of the evidence required to prove individual's status, 2) the complex factual issues regarding integrated enterprise and joint employer, and, as Defendant's have previously expressed, 3) the particular difficulties imposed by the pandemic on individual medical providers and front-line hospitals such as YNHH.

  - Defendant's position: June 1, 2021. A year for Phase I discovery is excessive and runs counter to the efficiencies created by undertaking the phased approach as set forth in the Court's August 8, 2020 Order (Doc. No. 34). Defendant proposes

---

[1] Defendant reserves all rights during discovery to object based on peer review privilege and the Health Insurance Portability and Accountability Act ("HIPAA") as applicable, as well as any other objections provided by Federal Rules Civil Procedure. Plaintiff reserves the right to challenge the assertion of any privileges.

> setting a nine month period for Phase I, with a mid-discovery conference set at which time the parties can update the Court on progress and seek extension or modification of the operative case management order if needed.

- The parties will file any motions for summary judgment concerning the status of the Aggrieved Individuals as "employees" under the ADEA and/or ADA no later than 45 days after the close of discovery.

- The parties do not anticipate expert discovery in Phase I.

**Phase II - ADEA and/or ADA treatment of the Policy (conducted, as necessary, within nine (9) months of entry of ruling on Phase I motions for summary judgment)**

- This phase is designed to address whether the Policy violates the ADEA or ADA, if necessary following Phase I. Phase II would include all available discovery tools, including an exchange of written discovery requests, the production of documents including ESI, and depositions. The topics addressed in Phase II would include the remainder of the previously identified issues not covered in Phase I (other than individual damages), including YNHH's affirmative and other defenses, as well as EEOC's entitlement to liquidated and/or punitive damages. The parties disagree as to the extent of oral discovery required in Phase II:

    - Defendant's Position: Defendant seeks to depose each Aggrieved Individual identified in Phase I (to the extent their claims are not resolved through Phase I dispositive motions). Defendant's position is that the EEOC's claims and YNHH's defenses necessitate individualized discovery on several issues, including but not limited to, each Aggrieved Individual's qualifications, ability to practice, and the actual impact of the Policy on each Aggrieved Individual's employment.

    - EEOC's Position: EEOC believes that deposing each Aggrieved Individual when there are no damages issues as part of this Phase, Phase I has resolved employment status, and there is no dispute that Defendant's Policy was applied to these individuals without consideration of their individual circumstances other than their age, is not proportional to the needs of the case and therefore opposes this request, absent good cause shown. Plaintiff reserves the right to oppose any such depositions.

- Phase II would also include **expert discovery.**

    - On any issue for which a party bears the burden of proof, the party would designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) (including the production of all back-up data and programs upon which those expert rely in developing their reports) by a date not later than 4 months before the deadline for completing all discovery in Phase II. Depositions of any such experts will be completed by a date not later than 2 months before the deadline for completing all discovery in Phase II.

9

- On any issue for which a party does not bear the burden of proof, parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by a date not later than 2 months before the deadline for completing all discovery. Depositions of such experts will be completed by a date not later than the discovery cutoff date.

- Phase II will be completed not later than <u>nine (9) months from</u> the entry of ruling on motions for summary judgment in Phase I. Within 60 days of the completion of Phase II discovery, the parties will file any motions for summary judgment concerning any Phase II issues including, but not limited to, whether the Policy violates the ADEA and or ADA and the viability of Defendant's defenses.

### Phase III - Damages

- If the ADEA and/or the ADA are deemed to apply (Phase I), and the Policy is determined to violate the ADEA and/or the ADA (Phase II), the parties shall conduct limited discovery to address any individual claims for damages, including, but not limited to, any lost wages and mitigation efforts.

- The number of Aggrieved Individuals that would still be involved at this stage in the case is impossible to determine at this juncture, and the size of that group would materially impact the best course for damages discovery. The parties agree to jointly ask that the Court hold a Phase III discovery conference to address the remaining plan for damages discovery, including the time required for this discovery and whether the parties intend to call damages experts. Doing so will streamline any remaining discovery.

6. The parties anticipate that the Plaintiff will require at least 10 depositions of fact witnesses in Phase II. At this time, the Defendant does not know how many Aggrieved Individuals the Plaintiff will identify, but it will seek a number equal to the number of individuals identified in Phase I of the case.

7. The parties will not request permission to serve more than 25 interrogatories in Phase II.

8. Plaintiff is likely to call an expert witness at trial. Defendant intends to call expert witness(es) at trial.

9. A damages analysis will not be provided by any party who has a claim or counterclaim for damages until after decisions on dispositive motions in Phase II.

10. The parties have submitted a stipulation relating to electronically stored information to the Court [Dkt. 33].

11. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. With the exception of a change proposed by the EEOC, the parties agree to follow the procedures described in the Court's Standing Protective Order for asserting claims of privilege after production.[2]

### F. Other Scheduling Issues

Defendant asserts the right to request a jury trial for Phase II at the conclusion of Phase I. Plaintiff contends that Defendant has waived this right.

### G. Summary Judgment Motions

See proposed phased discovery plan.

### H. Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by 60 days after the decisions on dispositive motions after Phase II of discovery, if any.

---

[2] Plaintiff informed Defendant that EEOC intends to seek modification of ¶ 12 of the Court's Standing Protective Order. Paragraph 12 reads as follows: "A party may submit a request in writing to the party who produced Designated material that the designation be modified or withdrawn. If the Designating Person does not agree to the redesignation within fifteen business days, the objecting party may apply to the Court for relief." As a public civil rights agency whose mission includes litigating in the public interest, EEOC maintains that confidentiality designations should be used sparingly. The public should have the ability to review the results of EEOC litigation, including materials produced in discovery that are attached to pleadings filed with the Court. As such, EEOC seeks a modification of the first two sentences of ¶ 12 as follows: "A party may submit a request in writing to the party who produced Designated Material that the designation be modified or withdrawn. If the Designating Person does not agree to the redesignation within *five business days, the Designating Person shall apply to the Court for relief*." Defendant intends to oppose Plaintiff's requested modification. Plaintiff's status has no bearing on the timing for seeking relief from a confidentiality designation or the identity of the party that should be required to seek relief from the Court in the event of a dispute.

## VI. TRIAL READINESS

The case will be ready for trial 30 days after the filing of the Joint Trial Memorandum.

Respectfully submitted,

By: */s/ Christopher J. DeGroff*
Christopher J. DeGroff

Christopher J. DeGroff
cdegroff@seyfarth.com, admitted *pro hac vice*
Shana Madigan, admitted *pro hac vice*
smadigan@seyfarth.com
Stephen Beiting, admitted *pro hac vice*
sbeiting@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive. Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Mary A. Gambardella (ct05386)
mgambardella@wiggin.com
Joshua J. Wyatt (ct28916)
jwyatt@wiggin.com
WIGGIN AND DANA LLP
One Century Tower
265 Church Street, 18th Floor
New Haven, Connecticut 06508
Tel: (203) 498-4328
Fax: (203) 789-2889
*Attorneys for Defendant*
*Yale New Haven Hospital, Inc.*

s/Markus L. Penzel (ct03381)
Markus L. Penzel
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Boston Area Office
JFK Federal Building, Room 475
Boston, MA 02203-0506
617-565-3193
markus.penzel@eeoc.gov

## CERTIFICATE OF SERVICE

This is to certify that on the 21st day of August, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Christopher J. DeGroff*
Christopher J. DeGroff