UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| U.S. EQUAL OPPORTUNITY COMMISSION,<br>     Plaintiff,<br><br>v.<br><br>YALE NEW HAVEN HOSPITAL, INC.,<br>     Defendant. | :<br>:<br>:<br>:    No.: 3:20-cv-00187  (VLB)<br>:<br>:<br>:    June 30, 2021<br>:<br>: |

MEMORANDUM OF DECISION GRANTING
PLAINTIFF'S MOTION TO COMPEL, [ECF NO. 71]

Plaintiff U.S. Equal Opportunity Commission (the "EEOC") brings claims against Defendant Yale New Haven Hospital ("Defendant") "under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, as amended, ("ADEA") and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices of the basis of age" based on Defendant's use of a "Late Career Practitioner Policy" ("the Policy") that requires neuropsychological and ophthalmologic examinations for individuals age 70 and older who apply for medical staff privileges at Yale New Haven Hospital.  [ECF No. 1 at 1].

I.   Background

On June 1, 2021, Plaintiff filed a motion to compel the production of two sets of documents; namely, peer review and credential files for the medical practitioners who are subject to the Policy, and the neuropsychological examinations used to examine such practitioners.  See [ECF Nos. 71, 82].  On June 28, 2021, the Court

1

held a hearing regarding the parties' discovery dispute.  See [ECF No. 88].  At the hearing, the Court GRANTED the EEOC's Motion to Compel, requiring Defendant to produce the requested documents within 30 days from the date of the hearing, and explained its reasons for the decision.  The Court now formally resolves this dispute.

II.  Discussion

    A.  **Federal Privilege Law Governs the Issues in this Case**

As a rule, federal law governs the existence of a privilege in a civil action in which federal law supplies the rules of decision, and state law governs the existence of a privilege where state law supplies the rule of decision.  See Fed. R. Evid. 501.  Federal question subject matter jurisdiction exists over this action under 28 U.S.C. § 1331 because the action arises under the ADEA and ADA. Thus, federal common law supplies the rules of decision and governs the existence of a privilege.  Fed. R. Evid. 501; *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

    B.  **The Facts of this Case Do Not Warrant Recognition of a Peer Review Privilege**

As the Plaintiff correctly points out, "there appears to be consensus among lower courts and in other circuits that no federal privilege protects medical peer review materials in civil rights . . . actions." [ECF No. 82 at 7 (quoting *Grenier v. Stamford Hosp. Stamford Health Sys., Inc.*, No. 3:14-CV-00970 (VLB), 2016 WL 3951045, at *3 (D. Conn. July 20, 2016) (quoting *Francis v. United States*, No. 09 CIV. 4004 (GBD) (KNF), 2011 WL 2224509, at *4 (S.D.N.Y. May 31, 2011) (citing cases)].  Moreover, "[d]espite wide codification of the privilege among states, there is broad

consensus that medical peer review privilege is not recognized under federal common law . . . and discoverability in federal cases other than medical malpractice and related actions is common and long-standing." *Wis. Province of the Soc'y of Jesus v. Cassem*, 485 F. Supp. 3d 482, 485, 489 (D. Conn. 2020) (citing Wigmore on Evidence § 782, Privilege for Medical Peer Review); *see also Univ. of Pa. v. EEOC*, 493 U.S. 182, 193 (1990) ("disclosure of peer review materials will be necessary in order for the [EEOC] to determine whether illegal discrimination has taken place.").

This does not, however, as Defendant suggests, [ECF No. 81 at 6], resolve the issue. This is because Rule 501 of the Federal Rules of Evidence affords district courts "flexibility to develop rules of privilege on a case-by-case basis." *Francis*, 2011 WL 2224509, at *4 (quoting *Univ. of Penn.*, 493 U.S. at 189). In determining whether to adopt a new federal privilege in a given case, "a district court must consider: (1) whether the privilege serves private and public interests; (2) the evidentiary benefit that would result from denial of the privilege; and (3) recognition of the privilege among the States." *Id.* (citing *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996)).

Here, the EEOC argues that "[u]nder the ADEA, an employer implementing an age-based policy must establish that the 'job qualifications which the employer invokes to justify his discrimination are '*reasonably necessary* to the essence of his business,' and that Defendant 'is compelled to rely on age as a proxy for th[ose] safety-related job qualifications.'" [ECF No. 82 at 11-12 (quoting *EEOC v. City of E. Providence*, 798 F.2d 524, 528 (1st Cir. 1986) (quoting *Western Air Lines v. Criswell*, 472 U.S. 400, 413 (1985) (emphasis in original))]. Defendant "must show that it *had*

3

to use age as a proxy [for patient safety] because it would have been 'impossible or highly impractical' to deal with the older employees on an individualized basis,'" *id.* at 12 (quoting *Providence*, 798 F.2d at 528) (emphasis in Plaintiff's Memorandum), and therefore the EEOC is "entitled to evidence indicating that [Defendant] could have performed individualized assessments—using factors other than age—to identify doctors who posed a risk to patient safety" by using, "[f]or example, the number and nature of patient and coworker complaints," which "may indicate a risk for adverse patient outcomes." *Id.* "Therefore, documents regarding the adoption of the Policy, (Req. No. 2), the "statistical data and studies available to Defendant" which purportedly supported the need for such a Policy (No. 7), and documents supporting Defendant's claim that the exams are job-related and consistent with business necessity (No. 8), for example, are key to allowing the EEOC to examine and/or challenge Defendant's stated need to adopt the policy. *See* Ex. 2, Req. Nos. 2, 7, 8." *Id.* at 11.

Defendant counters that because the EEOC is only objecting to the Policy, and not discrimination against any particular practitioner, "the evidentiary value of the individual [practitioner] files is . . . minimal at best" and "[t]he value of production of entire peer review credentialing files, which may contain, among other things, confidential information regarding specific patient incidents and reports by colleagues who were assured confidentiality, is remote, at best." [ECF No. 81 at 8]. Defendant also counters that the EEOC's motion to compel should be denied because the EEOC's requests are "overly broad and invasive . . . and the privacy interests of the individuals whose files are requested are not outweighed

4

by the limited, if not non-existent, probative value of the information demanded." *Id.*

The EEOC replies that "the credentialing and peer review files . . . are in fact *highly* relevant." [ECF No. 87 at 4 (emphasis in Reply Brief)]. This is because, the EEOC argues, Defendant must justify why it uses an age-related proxy "by showing that 'it is impossible or highly impractical' to deal with the older employees on an individualized basis, for example, by identifying poorly performing doctors using factors other than age," but the files requested, which Defendant admits includes "records of disciplinary actions, evidence of current malpractice, and specific patient incidents and report by colleagues," are "precisely the kind[s] of information that would allow [Defendant] to identify doctors who are not performing safely." *Id.* at 4-5 (citing *Criswell*, 472 U.S. at 414). The Court agrees.

The EEOC is entitled to review these records to see if the Policy enacted by Defendant in 2016 is necessary. And, while the peer review privilege "promote[s] the interests of health care practitioners, health care facilities and the public, by encouraging self-evaluation and improving the quality of care," *Grenier*, 2016 WL 3951045, at *4, any confidentiality concerns on Defendant's part can be addressed through agreement of the Parties and proper maintenance of confidentiality designations, including attorneys' eyes only, if necessary, in accordance with the Court's standing Protective Order issued at the commencement of this case. *See* [ECF No. 4]; *see also Cassem*, 468 F. Supp. 3d at 488-89 (disagreeing that compelling discovery would have a chilling effect on peer review because "the discovery materials are subject to a protective order to preserve confidentiality").

In addition, the Court is bothered by Defendant's refusal, even after several months, to produce the privilege log required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.") Without the benefit of a privilege log, it is inconceivable how the Court could fully and fairly assess Defendants' objection. Equitably, this should weigh in Plaintiff's favor. *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D. Conn. 2007) ("An invocation of a claim of privilege without producing an accompanying privilege log can be an unfair discovery tactic that increases delay in the resolution of lawsuits, fosters excessive motion practice, increases the costs of litigation, and greatly increases the work of the court.").

Finally, the Court finds that the EEOC's requests are not overly burdensome, encompassing as they do the files of only 115 practitioners, a number of documents far lower than in many other, if not the mine run, of civil cases in federal court. Plaintiff has presented information to the contrary, as contemplated by the Federal Rules of Civil Procedure. Moreover, the Federal Rules were amended in 2015 making proportionality the touchstone for discoverability, not necessarily whether a request is "overly broad," standing alone. *See Mamakos v. United Airlines, Inc.*, No. CV 14-7294 (JFB) (AKT), 2018 U.S. Dist. LEXIS 168803, at *4-6

(E.D.N.Y. Sept. 28, 2018) (noting that "[i]nformation is discoverable ... if it is relevant to any party's claim or defense and is proportional to the needs of the case" and holding Defendant's "overly broad" objection to discovery inappropriate) (quoting Fed. R. Civ. P. 26(b)(1) and Rule 26 Advisory Committee's Note to 2015 Amendments); *CBF Industria De S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2019 U.S. Dist. LEXIS 124326, at *35 n.19 (S.D.N.Y. July 25, 2019) (same); Fed. R. Civ. P. 26 advisory committee's note to 2015 Amendment ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery.").

In sum, given the extreme public interest in ensuring that age discrimination, if it exists at all, is appropriately limited to cases where no other way of ensuring public safety is available, or other equally compelling circumstances, and given the minimal private interest in Defendant's medical practitioner's having their personnel files reviewed in litigation, where sensitive personal information will be protected from public disclosure, the high probative value of the requested files, and the fact that these files are being requested to redress the rights of the doctors themselves, the Court finds that Defendant must produce the requested practitioner credential and peer review files in 30 days. Although the peer review privilege is widely recognized in state courts, *Grenier*, 2016 WL 3951045, at *6, the balancing of public and private interests, and the probative nature of the files requested, militates against its use here.

7

### 2. Defendant must produce the Neuropsychological Tests the EEOC Seeks

The EEOC argues that Defendant has the burden to show that the neuropsychological examinations it administers under the Policy are "job-related and consistent with business necessity," [ECF No. 82 at 15 (citing ADA § 12112(d)(4)(A))], and are "no broader or more intrusive than necessary." *Id.* (quoting *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir. 2003). Therefore, the EEOC argues, "[i]t is not possible for the EEOC to challenge [Defendant]'s necessary assertion that the tests 'are no broader or more intrusive than necessary' if the EEOC *never even gets to examine the tests*. Similarly, the EEOC, and its experts, must review the tests to evaluate their effectiveness in achieving YNHH's stated goals, which include – according to YNHH – patient safety." *Id.* at 15-16 (emphasis in Plaintiff's Memorandum).

Apparently, Defendant agrees, and argued at the hearing before the Court that it intends to produce the examinations the EEOC seeks, but, in the interests of saving time, it intends its production to be limited to what is obtained from the publisher, with the test administrator conducting a review of his own materials to see if there is any difference between his materials and those from the publisher.

The Court finds this unacceptable. First, the EEOC is entitled to the test administrator's documents, i.e., the raw data, i.e., the versions of the tests actually administered under the Policy, and the administrator's notes regarding same. In addition, the Court is unpersuaded by Defendant's claim that its proposed approach is more efficient. The Court finds that it would probably take *more time*

for the review and comparison Defendant suggests than it would to simply ask the administrator to have his test materials copied for Defendants to produce.

### III.   Conclusion

For the reasons set forth above, the Court declines to recognize a federal medical peer review privilege in this case. Accordingly, and for the other reasons stated above, the EEOC's Motion to Compel documents and information subject to this privilege is GRANTED, and Defendant is ORDERED to produce the requested documents within 30 days.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 30, 2021