# EXHIBIT 1

| | |
|---|---|
| **From:** | KIRSTEN PETERS <KIRSTEN.PETERS@EEOC.GOV> |
| **Sent:** | Thursday, June 17, 2021 1:11 PM |
| **To:** | DeGroff, Christopher |
| **Cc:** | Gambardella, Mary; Madigan, Shana; LATEESHA VINES; KIMBERLY CRUZ; CAITLIN BROWN; Wyatt, Joshua; MARKUS PENZEL |
| **Subject:** | RE: EEOC v. YNHH: Meet and Confer [response to EEOC's 6/4/21 communication] |

**[EXT. Sender]**

Chris,

It appears that Mary's May 12th promise to reach out to us to schedule a time to talk about depositions has been replaced with a decision to exchange emails with accusatory tones.  I refuse to adopt that tone here.  I do, however, want to address some of the essential points in your email below with the hope that we can have a reasonable discussion about them.

<u>Depositions</u>.  First, we do not agree with your characterization of our decision to dismiss the interference claim. I understand from prior communications that YNHH rested its hat on the interference claim to explain a need to take all of the Aggrieved Individuals' depositions, relying primarily on inapplicable Seventh Circuit case law. As our communications undoubtedly capture, the EEOC has *never* agreed that the interference claim provided a legitimate basis for depositions, based on the language of the ADA itself and authority within this jurisdiction.  Assuming the Court grants our motion to dismiss, two clear claims, and defenses asserted in your Answer, will remain.

For the ADEA claim, the EEOC challenges the YNHH Late Career Practitioner Policy ("LCPP") because it singles out employees in the protected age group for differential treatment based solely on their age. Your Answer asserts the BFOQ defense, which requires a showing that (1) the classification is "reasonably *necessary* to the normal operation of the particular business;" and (2) that "the employer is compelled to rely on age as a proxy for the safety-related job qualifications validated in the first inquiry." *W. Air Lines, Inc. v. Criswell,* 472 U.S. 400, 413–14 (1985). There are two ways to establish the second prong of this test: (1) the employer had reasonable cause to believe that substantially all persons over the particular age would be unable to perform the job safely and efficiently, or (2) it is "impossible or highly impracticable to deal with the older employees on an individualized basis." *Id.* at 414.

For the ADA claim, given YNHH's admission that the tests at issue are "medical examinations" under the ADA, you need to show that the tests are "job-related and consistent with business necessity."  At page eight of the Answer, YNHH indicates that "patient safety" is the business necessity at issue. *See* Dkt. No. 24 ("At all times relevant to the acts alleged in the Complaint, Defendant acted in conformity with all applicable laws, rules, and regulations, and any actions taken with respect to Complainant were undertaken for legitimate, non-discriminatory and non-retaliatory business reasons, chief among which is the safety of Defendant's patients.")

Simply put, testimony from the aggrieved individuals will not help YNHH support any of the above-referenced elements of its defense. The existence of the LCPP and the fact that the aggrieved individuals were subjected to it is undisputed and is the source of the harm at issue in this litigation.  While your email references "job qualification facts" and the EEOC's motion to compel, we do not understand to what you are referring.

You also ask whether the EEOC will rely on the testimony of any particular Aggrieved Individual, while at the same time asserting that the EEOC's answer will have no impact on Defendant's position regarding depositions.  At the moment, the EEOC cannot completely rule out its need for testimony from Aggrieved Individuals because Defendant's responses to discovery are incomplete.  At present, YNHH has objected to and withheld documents in response to many of the EEOC's 40 requests for production of documents. Furthermore, EEOC does not know what steps YNHH has taken to search for electronically stored information and, to the extent YNHH provided *some* ESI for the first time on June 11, that production is partial and incomplete.  We believe the documents and ESI the EEOC requested are relevant and necessary to the proof of the claims and rebuttal of YNHH's defenses, and as our motion to compel is pending (and another is in progress), we do not yet know whether YNHH will ultimately withhold these key documents.  Given the current significant uncertainty as to what evidence YNHH will ultimately produce, we could not possibly agree with any confidence that testimony from Aggrieved Individuals will not be necessary for purposes of summary judgment or trial.

Moreover, as I mentioned above, we still have not yet had a reasonable discussion of the issues you raised for the first time on May 12 concerning the rationale behind taking the depositions of Aggrieved Individuals.  Indeed, Mary agreed to get back to us on these issues, including the *number* of Aggrieved Individual depositions YNHH seeks to take. In YNHH's May 12 submission to the Court, you asserted for the first time that deposition testimony could relate to YNHH's affirmative defenses, and claimed that the EEOC had alleged that each provider was a qualified individual under ADA (it has not, and need not do so). To the extent Defendant is pursuing these positions, the parties have not conferred about either, and so have not had the opportunity to determine whether it may be possible for Defendant to obtain any information to which it is entitled in a manner more efficient than deposing 115 individuals.

We remain amenable to conferring on these questions.  However, to the extent you continue to refuse to engage substantively on these issues, the FRCP permits each party 10 depositions.  The rules will require you to provide the basis for your need to exceed that number.

<u>ESI.</u>   Your assertion that the EEOC has not produced ESI is incorrect. The EEOC has indeed collected email and other ESI and produced it to you.  (*See* EEOC_0000001-455). Furthermore, EEOC has coordinated with its voluntary claimants to identify and collect any evidence that is responsive to YNHH's discovery requests, including relevant ESI, which has also been produced. That claimants do not possess volumes of ESI or other evidence responsive to your discovery requests is not surprising. Obviously, it is YNHH that possesses the overwhelming majority of information and documents relating to this litigation.

In your email, you inexplicably assert that "YNHH's explanation of the auto-delete issues predated both the charge and the lawsuit by years."  We do not understand how you could assert that you explained the auto-delete issue to the EEOC years before the charge was even filed.  Defendant only recent disclosed this deletion policy, and the EEOC is entitled to understand the actions Defendant has—or has not—taken to preserve and collect relevant evidence, so we may assess the degree of any spoliation by Defendant.

You ask in your email that we point you to the portion of the FRCP that requires YNHH to provide what you assert is privileged information regarding its "process and methodology in searching for ESI and the ESI searches you have conducted to date." Setting the issue of privilege aside for a moment, it is Rules 26(f)(3)(C) and 37 that require a cooperative exchange of information regarding ESI. *See* Committee Notes regarding the 2006 Amendment (contemplating discussion of systems and sources relevant to ESI). In fact, specifically as it relates to ESI discovery, "[t]rial courts encourage and expect that sort of cooperation amount counsel" and find that "[o]f course, the best solution in the entire area of electronic discovery is cooperation among counsel." *Bagley*

2

*v. Yale Univ.*, 307 F.R.D. 59, 63 (D. Conn. 2015) (internal quotation marks omitted) (quoting *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y.2009) (Peck, M.J.)); *see also Fam. Wireless #1, LLC v. Auto. Techs., Inc.*, No. 3:15CV01310(JCH), 2016 WL 2930887, at *1 (D. Conn. May 19, 2016) (noting the parties' efforts to reach agreement regarding the proper custodians and other parameters relating to a search for ESI and partially granting plaintiff's motion for ESI).

Furthermore, the parties filed a stipulation agreeing that we would cooperate as it relates to the search for ESI. ECF No. 33. In fact, the parties agreed that we would meet and confer "to identify those custodians whose documents and ESI should potentially be preserved in response to discovery," "to identify reasonably accessible and potentially not reasonably accessible custodial and non-custodial source of documents and ESI," and "regarding the use of electronic search terms and other technologies to help identify potentially relevant documents and ESI." Therefore, even if the Rules didn't require cooperation, our stipulation does.  We've been asking for your cooperation since January.

As to the issue of privilege, courts have consistently held that the parties are "entitled to know the methodology and manner of the ESI production[.]" *Ferring v. Fera Pharms., LLC*, No. CV134640SJFAKT, 2016 WL 5396620, at *3 (E.D.N.Y. Sept. 27, 2016) (holding that such information is not privileged). In fact, how a party searched for ESI is "precisely the type of information which is generally shared by counsel in complex litigation cases so that they may reach an agreement regarding the scope of production of ESI." *Id.*
While YNHH may have partially responded to the questions the EEOC raised in section 2(a) of its email below, the remaining information the EEOC has requested regarding YNHH's efforts to search for and preserve relevant ESI has not been provided. Please immediately respond with this information.

<u>Rule 26 </u>Disclosures. One final point. Given the failure of Judge Bolden to adopt our joint scheduling proposal before his recusal, we have not exchanged required disclosures under Rule 26(a)(1).  We propose to remedy this with the simultaneous exchange of initial disclosures no later than July 1, 2021.  Please advise whether you will agree to this.

Sincerely,
Kirsten Peters
Trial Attorney
U.S. EEOC - New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Office: 929-506-5325
Mobile: 646-354-9228

| | |
|---|---|
| **From:** | KIRSTEN PETERS <KIRSTEN.PETERS@EEOC.GOV> |
| **Sent:** | Tuesday, September 21, 2021 7:14 PM |
| **To:** | DeGroff, Christopher; Gambardella, Mary |
| **Cc:** | Madigan, Shana; Wyatt, Joshua; KIMBERLY CRUZ; CAITLIN BROWN; SONYA SHAO; EDUMIN CORRALES |
| **Subject:** | EEOC v. YNHH - Follow Up to Today's Meet and Confer |

**[EXT. Sender]**

Counsel,

Following up on today's meet and confer, it continues to be the EEOC's position that it cannot rule out the possibility that it may need to offer testimony from Aggrieved Individuals either during summary judgment or at trial. However, aside from anyone we depose, we will only offer testimony from Aggrieved Individuals who are or will be voluntary claimants.

Relatedly, you have not indicated how many additional depositions you intend to seek from the Court. We believe additional claimant depositions would be duplicative and cumulative, but, so as to ensure that we are not overlooking any avenues for compromise, please let us know how many additional depositions you intend to request.

Sincerely,
Kirsten Peters
Trial Attorney
U.S. EEOC - New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Office: 929-506-5325
Mobile: 646-354-9228

| | |
|---|---|
| **From:** | CAITLIN BROWN <CAITLIN.BROWN@EEOC.GOV> |
| **Sent:** | Thursday, September 23, 2021 7:32 PM |
| **To:** | DeGroff, Christopher; Gambardella, Mary |
| **Cc:** | Madigan, Shana; Wyatt, Joshua; KIMBERLY CRUZ; SONYA SHAO; EDUMIN CORRALES; KIRSTEN PETERS |
| **Subject:** | EEOC v. YNHH: Depositions |

**[EXT. Sender]**

Chris and Mary,

Thank you for conferring regarding your request to take additional depositions above the ten provided by the rules. We continue to believe that additional depositions beyond ten are not warranted here, as the information sought is either irrelevant to the claims and defenses at issue, is more easily obtained from documents already in Defendant's possession, or is cumulative of deposition testimony already taken, and so additional depositions are not proportionate to the needs of the case here. Further, we find Defendant's recent 30(b)(6) notice to be an inappropriate attempt to circumvent the rules governing the number of depositions a party may take.

However, solely in the interest of compromise and to avoid the expenditure of the Court's resources in resolving this dispute, we are willing to permit Defendant to take six additional remote depositions of voluntary claimants of three hours each, assuming Defendant agrees to seek no other depositions during this phase of discovery (which includes withdrawing its 30(b)(6) deposition notice). Please let us know if Defendant will agree to this compromise.

Additionally, we plan to update our initial disclosures to reflect our prior communications that it is possible the EEOC may use testimony from the voluntary claimants to support its claims. We will send the updated disclosures to you shortly.

Thanks,

Caitlin



**Caitlin D. Brown | Trial Attorney | She/Her**
United States Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor, New York, NY 10004
Phone: 929.506.5277 | Fax: 212.336.3623
Email: caitlin.brown@eeoc.gov