**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------X
                             :
EQUAL EMPLOYMENT OPPORTUNITY :   Case No.: 3:20CV00187(SALM)
COMMISSION                   :
                             :
v.                           :
                             :
YALE NEW HAVEN HOSPITAL, INC. :  November 10, 2021
                             :
-----------------------------X
```

## RULING ON MOTION TO AMEND THE COMPLAINT TO VOLUNTARILY DISMISS ADA INTERFERENCE CLAIM [Doc. #70]

Plaintiff the Equal Employment Opportunity Commission ("plaintiff") has filed a motion seeking leave to file an amended complaint which would remove the claim asserted for interference pursuant to the Americans with Disabilities Act, 42 U.S.C. §12203(b) (hereinafter the "ADA"). [Doc. #70]. Plaintiff requests that the Court enter an order dismissing that claim, without prejudice. See id. at 1. Defendant Yale New Haven Hospital, Inc. ("defendant") has filed "a limited Opposition in Part to [plaintiff's] Motion to Amend[,]" contending that dismissal of the ADA interference claim should be with prejudice. Doc. #79. Plaintiff has filed a reply in support of its motion. [Doc. #85]. For the reasons stated below, plaintiff's Motion to Amend the Complaint to Voluntarily Dismiss the ADA Interference Claim [**Doc. #70**] is **GRANTED.**

I.    **Background**

On February 11, 2020, plaintiff filed this action against
defendant alleging that defendant "has adopted and implemented
what it calls a 'Late Career Practitioner Policy' ('the
Policy'), that requires any individual age 70 and older ... who
applies for, or seeks to renew, medical staff privileges at YNHH
to take both an ophthalmologic and a neuropsychological medical
examination." Doc. #1 at 1. Plaintiff asserts that it has
brought this action "to correct unlawful employment practices on
the basis of age, to redress interference with rights protected
under the ADA, to stop medical examinations in violation of the
ADEA and ADA, and to provide appropriate relief to ... aggrieved
employees and individuals who were adversely affected by such
practices." Id. The original Complaint asserts one claim for
violation of the ADEA, and three claims for violation of the
ADA, including one count for interference with rights protected
thereunder. See generally Doc. #1 at 6-10. Defendant answered
the original Complaint on May 13, 2020. [Doc. #24].

On August 8, 2020, Judge Victor A. Bolden entered a Case
Management Order, which divided discovery "into two phases: (1)
Phase I will determine the employment status of any individuals
affected by the Policy, after which summary judgment motions on
this issue will be filed; and (2) Phase II will address whether

2

the Policy violates either the ADEA or the ADA, to the extent
necessary." Doc. #34 at 1. On September 14, 2020, this case was
transferred to Judge Vanessa L. Bryant. [Doc. #39]. On October
16, 2020, Judge Bryant entered a preliminary scheduling order
setting interim deadlines for Phase I discovery. [Doc. #45].

On January 21, 2021, the parties filed a Joint Motion to
Approve Stipulation Regarding Employer Status of Yale New Haven
Hospital, Inc., in which the parties stipulated "to the
employment status of certain categories of Affected
Individuals," to "obviate additional litigation and motion
practice[]" on this issue (hereinafter the "Stipulation"). Doc.
#60 at 1. On January 22, 2021, Judge Bryant granted the parties'
motion, and approved the Stipulation. See Doc. #61. Phase II
discovery is currently scheduled to close on March 22, 2022, and
dispositive motions are currently due by May 23, 2022. See Doc.
#103.

Plaintiff now seeks to amend the original Complaint to
withdraw the ADA interference claim, without prejudice. See Doc.
#70 at 1. Plaintiff asserts that the ADA interference claim "is
no longer necessary[,]" in light of the parties having
stipulated "as to the employment status of persons aggrieved by
the Policy" at issue in this case. Doc. #70-1 at 2-3. Although
defendant "agrees" that the ADA interference claim should be

3

dismissed, defendant contends that the dismissal should be with prejudice. Doc. #79 at 1.

## II.  __Applicable Law__

Plaintiff moves to amend the original Complaint under Rules 15(a) and 41(a)(2) of the Federal Rules of Civil Procedure. See Doc. #70 at 1.

At this stage of the litigation, plaintiff may amend the original Complaint "only with the opposing party's written consent or the court's leave[,]" which leave should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). Where plaintiff seeks to withdraw a claim that defendant has answered, plaintiff may do so "only by court order, on terms that the court considers proper." Fed R. Civ. P. 41(a)(2).

"[A] district court may permit withdrawal of a claim under Rule 15 ... subject to the same standard of review as a withdrawal under Rule 41(a)." Wakefield v. N. Telecom, Inc., 769 F.2d 109, 114 n.4 (2d Cir. 1985) (citation omitted); see also ING Bank, N.V. v. M/V Afr. Swan, No. 16CV01242(GBD)(BCM), 2017 WL 1080078, at *3 (S.D.N.Y. Mar. 9, 2017). Under either rule, "the trial court has considerable discretion" to grant a motion dismissing a claim without prejudice. Wakefield, 769 F.2d at 114; accord Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ.

Holdings LLC, No. 16CV05393(KMW), 2018 WL 1115517, at *2
(S.D.N.Y. Feb. 26, 2018) (same).

"[T]wo lines of authority have developed with respect to
the circumstances under which a dismissal without prejudice
might be improper." Kwan v. Schlein, 634 F.3d 224, 230 (2d Cir.
2011) (citation and quotation marks omitted). The first
"indicates that such a dismissal would be improper if the
defendant would suffer some plain legal prejudice other than the
mere prospect of a second lawsuit." Id. (citation and quotation
marks omitted). The second directs the trial court to consider
"various factors, known as the Zagano factors." Id. (citation
and quotation marks omitted). These factors

> include the plaintiff's diligence in bringing the
> motion; any "undue vexatiousness" on plaintiff's part;
> the extent to which the suit has progressed, including
> the defendant's effort and expense in preparation for
> trial; the duplicative expense of relitigation; and the
> adequacy of plaintiff's explanation for the need to
> dismiss.

Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990); accord
Kwan, 634 F.3d at 230; Ultimate Nutrition, Inc. v. Diamond
Drinks, Inc., No. 3:06CV00069(MRK), 2007 WL 2786420, at *1 (D.
Conn. Sept. 24, 2007). "The Court will analyze each of these
factors individually, but no one factor is dispositive. The
crucial inquiry remains whether the defendant will suffer
substantial prejudice as a result of a dismissal without

prejudice." ING Bank, 2017 WL 1080078, at *3 (citation and quotation marks omitted); see also Richards v. Groton Bd. of Educ., No. 3:14CV00709(VLB), 2015 WL 4999803, at *2 (D. Conn. Aug. 21, 2015) ("Regardless of the test employed, the presumption in this circuit is that such motions should be granted absent a showing of substantial prejudice." (citation and quotation marks omitted)).

"In instances in which the Zagano factors 'have little, if any, relevance,' such as where there is 'no possibility of relitigation at the instance solely of the plaintiff,' the district court should apply the legal prejudice test." Richards, 2015 WL 4999803, at *2 (quoting Kwan, 634 F.3d at 230). Based on the representations in the parties' briefing, the withdrawal of plaintiff's ADA interference claim would not bar plaintiff's unilateral litigation of that claim. See Doc. #70-1 at 9; Doc. #79 at 4. Accordingly, the Court applies the Zagano factors in considering plaintiff's request for leave to amend.[1]

---

[1] In response to an argument advanced by defendant, plaintiff makes a contention, almost in passing, that the Zagano factors "arguably do not apply at all." Doc. #85 at 8. The Court disagrees with this assessment, particularly in light of plaintiff's reliance on the Zagano factors to advance its argument in the motion to amend. See Doc. #70-1 at 6-10.

III. **Discussion**

The <u>Zagano</u> factors weigh in favor of granting plaintiff's
motion to amend and dismissing the ADA interference claim
without prejudice.

A.   <u>Diligence</u>

Plaintiff asserts that it has been diligent in bringing the
instant motion, which was not possible until the conclusion of
Phase I discovery and the approval of the Stipulation. <u>See</u> Doc.
#70-1 at 6; Doc. #60. Defendant asserts that plaintiff was not
diligent in bringing the motion because it was filed "nearly six
months" after the parties filed the Stipulation. Doc. #79 at 2.
Defendant continues: "The parties have engaged in months of
extensive and costly discovery already, much of which was
probative to the interference claim." <u>Id.</u> In reply, plaintiff
contends that its motion was filed just four months after the
approval of the Stipulation and that such "a minimal time
period" does not "constitute[] undue delay." Doc. #85 at 2.

A good "measure of diligence is whether a plaintiff moved
to dismiss [a claim] without prejudice within a reasonable
period of time after the occurrence of the event that led to the
plaintiff's decision not to pursue the [claim]." <u>Ascentive, LLC
v. Opinion Corp.</u>, No. 10CV04433(ILG)(SMG), 2012 WL 1569573, at
*4 (E.D.N.Y. May 3, 2012). Here, plaintiff filed the instant

7

motion approximately <u>four</u> months after Judge Bryant approved the
Stipulation, not "almost six months" as represented by
defendant. <u>See</u> Doc. #79 at 2. Although plaintiff did not act
quickly in filing the motion, the motion was nevertheless filed
in a reasonable amount of time after the Stipulation had been
approved. <u>Compare</u> <u>Ascentive</u>, 2012 WL 1569573, at *4 (granting
motion to dismiss, without prejudice, where motion was filed a
month and a half after triggering event); <u>with</u> <u>Universal Marine</u>
<u>Med. Supply, Inc. v. Lovecchio</u>, No. 98CV03495(ILG), 1999 WL
441680, at *5 (E.D.N.Y. May 7, 1999) (Plaintiff had "not been
diligent" in bringing the motion, where it waited eight months
to file its motion to dismiss after the triggering event.).

    "The record does not reflect that [plaintiff] was dilatory
in bringing its motion; rather it seeks dismissal of certain
[claims] to facilitate the litigation." <u>Stanley Works v.</u>
<u>Alltrade, Inc.</u>, No.3:02CV01468(PCD), 2004 WL 367619, at *2 (D.
Conn. Feb. 23, 2004). Accordingly, this factor weighs in favor
of granting plaintiff's motion.

    B.   Undue Vexatiousness

    "Undue vexatiousness requires a finding of ill motive."
<u>Jose Luis Pelaez</u>, 2018 WL 1115517, at *4 (citation and quotation
marks omitted). Defendant does not contend, and there is no
evidence to suggest, that plaintiff was unduly vexatious in

8

bringing the instant motion. Accordingly, this factor also weighs in favor of granting plaintiff's motion.

C.   Progression of the Lawsuit

This case has not progressed to a point that weighs against granting plaintiff's motion to amend. Although Phase I discovery has closed, see Doc. #61, the parties continue to engage in Phase II discovery, which is not scheduled to close until March 22, 2022. See Doc. #103. No dispositive motions have been filed, and no date for trial has been set. Accordingly, this factor also weighs in favor of granting plaintiff's motion. See, e.g., Ascentive, 2012 WL 1569573, at *5 ("Though the parties did engage in discovery with respect to Ascentive's preliminary injunction motion, much discovery — including the taking of additional depositions — remains to be completed, no pre-trial conference has been held, and a trial date has yet to be set. Under similar circumstances, courts have concluded that this factor weighs in favor of the plaintiff.").

D.   Duplicative Expense of Relitigation

Plaintiff asserts that it "does not seek to refile this claim in another forum, and has no plan to reassert this claim in the present lawsuit, thus there is little chance that [defendant] will include duplicative litigation expenses." Doc. #70-1 at 9. However, in the event plaintiff does later reassert

the ADA interference claim, "discovery related to the remaining ADA and ADEA claims substantially overlaps ... [with] the ADA interference claim," and therefore "could be easily carried over to any subsequent litigation of this claim." Id. (citation and quotation marks omitted). Defendant disagrees, arguing that "re-litigating the interference claim -- the nature of which is highly individual to the circumstances of each Affected Individual" would not so easily be "carried over" and would "necessarily include discovery started anew and additional months of expensive, time-consuming, and repetitive discovery." Doc. #79 at 4.

The extent to which defendant would need to relitigate the ADA interference claim is unclear, given defendant's representation that it has "engaged in months of extensive and costly discovery already, much of which was probative to the interference claim." Id. at 2. Regardless, the risk of re-litigating this claim seems slim, and the Court finds this to be a neutral factor, weighing neither in favor nor against granting plaintiff's motion.

E.   Adequacy of Plaintiff's Explanation

Plaintiff's explanation for the withdrawal of the ADA interference claim is adequate. Plaintiff states the ADA interference claim "ensured a remedy for victims of the Policy

10

who might not ultimately be considered 'employees' of"
defendant. Doc. #70-1 at 3. However, since filing that claim,
and after conducting relevant discovery, "the Parties were able
to reach agreement as to the employment status of persons
aggrieved by the Policy, and filed a joint Stipulation providing
that, for purposes of this litigation, the individuals at issue
were employees of [defendant] under the ADEA and ADA." Id. at 2-
3. As a result of the parties' Stipulation, the ADA interference
claim "is no longer necessary." Id. at 3; see also id. at 10.
Accordingly, this factor weighs in favor of granting plaintiff's
motion.

    F.   Prejudice to Defendant

    Finally, "[a]s the non-movants, Defendants bear the burden
of demonstrating that substantial prejudice would result were
the proposed amendment to be granted." Jose Luis Pelaez, 2018 WL
1115517, at *2 (citation and quotation marks omitted). Defendant
has failed to meet this burden.

    The crux of defendant's argument is the potential threat of
relitigation. "[S]tarting a litigation all over again does not
constitute legal prejudice." D'Alto v. Dahon California, Inc.,
100 F.3d 281, 283 (2d Cir. 1996). Defendant has failed to
demonstrate any other way in which withdrawal of the ADA

interference claim, without prejudice, would result in

substantial prejudice.

Thus, the Court's consideration of the <u>Zagano</u> factors

weighs in favor of granting plaintiff's motion to amend and

dismissing the ADA interference claim without prejudice.

**IV.   Conclusion**

For the reasons stated, plaintiff's Motion to Amend the

Complaint to Voluntarily Dismiss the ADA Interference Claim

[**Doc. #70**] is **GRANTED.**

Plaintiff shall separately file the proposed Amended

Complaint [Doc. #70-3] forthwith, and in any event no later than

**November 17, 2021.**

SO ORDERED this 10th day of November 2021 at New Haven,

Connecticut.

/s/
_____
Hon. Sarah A. L. Merriam
United States District Judge

12