IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No. 3:20-cv-00187-SALM |
| v. | )<br>) March 3, 2022 |
| YALE NEW HAVEN HOSPITAL, INC., | )<br>) |
| Defendant. | ) |

**THE EEOC'S MOTION FOR LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT ON A SINGLE DISPOSITIVE ISSUE FOR ITS ADA CLAIM**

The U.S. Equal Employment Opportunity Commission hereby seeks leave of the Court to file a motion for partial summary judgment on a single issue dispositive of its ADA claim, on limited undisputed facts, without prejudice to its right to file a later subsequent motion if warranted.

Defendant Yale New-Haven Hospital asserts that its Late Career Practitioner Policy, which requires neuropsychological and ophthalmologic testing for practitioners aged seventy and above, is necessary to "prevent patient harm."[1] However, Defendant admits to possessing no evidence that the Policy actually has such an impact.[2] Under Second Circuit law, to prevail on the

---

[1] Dkt. No. 129-5, Excerpts from 30(b)(6) Deposition of Dr. Balcezak (hereinafter "30(b)(6) Dep."), 250:22-251:1.

[2] *See* 30(b)(6) Dep., 249:16-21 (when asked, "is there any evidence the adoption of late career practitioner policy has prevented patient harm," Dr. Balcezak responded, "I would say that is not evidence that we would be able to create."); *see also, id.,* 247:18-248:7; Defendant's Opposition to the EEOC's Motion to Compel, Dkt. No. 135 at 3 ("There is simply no way to accurately measure a mistake that never happened. For practitioners who were notified of potential problem areas and adjusted their practice as a result, there is not a statistic that can be culled from the Hospital's records that will show that success."); Dkt. No. 129-6, Excerpts from Deposition of Theresa Zinck-Lederer (hereinafter "Zinck-Lederer Dep."), 300:5-300:19 (when asked whether there was evidence that patient harm increased when YNHH suspended its testing under the

affirmative defense of business necessity under the Americans with Disabilities Act, a defendant "must actually show that the [Policy] contributes to the achievement of th[e] business necessities" it claims. *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 101 (2d Cir. 2003). The EEOC therefore views this admission—that there is no evidence that the Policy prevents patient harm—as fatal to Defendant's affirmative defense under the ADA. The Commission believes addressing this claim now promotes the most efficient use of the Court's resources, and allows the parties to potentially focus the issues for trial, as described below. The EEOC therefore requests leave of Court to file a narrow motion for partial summary judgment on limited facts, on the issue of whether YNHH's Policy actually "contributes to the achievement of th[e] business necessit[y]" of patient safety that YNHH asserts. *Id.*

## ARGUMENT

YNHH has asserted the affirmative defense of business necessity to the EEOC's claim that YNHH's Late Career Practitioner Policy ("LCPP" or the "Policy") imposes medical examinations which are unlawful under the ADA. *See* Dkt. No. 125 at 8. Specifically, 42 U.S.C. § 12112(d)(4)(A) provides that a "covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability. . . unless such examination or inquiry is shown to be job-related and consistent with business necessity." Through YNHH's Amended Answer and the Parties' Stipulation (Dkt. No. 60), YNHH has admitted the elements of the EEOC's *prima facie* claim,[3] and so the only

---

Policy during the pandemic, Ms. Zinck-Lederer testified that the "[i]nformation is not available . . . . It doesn't exist.").

[3] In its Amended Answer, YNHH admits that it is a covered entity under the ADA, (Dkt. No. 125, ¶ 6), "that the Late Career Practitioner Policy ("Policy") requires physicians and other practitioners obtaining or renewing their privileges who . . . have attained age 70 or over, to undergo a neuropsychological screening and ophthalmologic exam," *(id.*, ¶ 19), and that these "exams administered in connection with the Late Career Practitioner Policy are medical exams

2

outstanding issue is whether the examinations under YNHH's Policy are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

To prove that the examinations are a business necessity, YNHH "must actually show that the [Policy] contributes to the achievement of [its stated] business necessities." *Conroy,* 333 F.3d at 101. Thus, YNHH "has the burden to demonstrate that its policy actually effects its purpose." *Fountain v. New York State Dep't of Corr. Servs.*, No. 99-CV-389, 2005 WL 1502146, at *8 (N.D.N.Y. June 23, 2005). The Second Circuit instructed that, when asserting this defense, "fact[s]" regarding "the *efficacy* of" the policy at issue are "particularly necessary," and "emphasize[d] that the examination of whether a policy *actually contributes* to the business necessity is vital." *Conroy*, 333 F.3d at 99-100 (emphasis added). Therefore, where "the record does not contain any information, one way or the other, as to the nature and effect of the [policy]," defendant's business necessity defense fails. *Fountain*, 2005 WL 1502146, at *8. This is so even where defendant asserts that the impact of its policy is "impossible to measure." *Id.*

In November 2021, YNHH's former Chief Medical Officer and current Chief Executive Vice President and Chief Clinical Officer of the Yale New Haven Health System, Dr. Balcezak, testified as YNHH's 30(b)(6) representative. Dr. Balcezak testified that the purpose of the Late Career Practitioner Policy is to "prevent patient harm," specifically "serious events where patients were harmed and it could be preventable." 30(b)(6) Dep., 250:22-251:1; 239:3-23. However, before adopting the LCPP, YNHH never analyzed whether its practitioners aged

---

under the ADA." *Id.*, ¶ 29. Pursuant to the Parties' stipulation, at least some of the practitioners subjected to the Late Career Practitioner Policy were Defendant's employees under the ADA, for purposes of this litigation. Dkt. No. 60, ¶¶ 1-2. The EEOC's *prima facie* claim under the ADA is therefore established.

3

seventy and above *actually caused* more patient harm than their younger colleagues.[4]  30(b)(6) Dep., 228:21-229:5.  YNHH began testing practitioners under the LCPP in 2016, and has continued to do so with the exception of a pause in testing of approximately one year starting in March 2020 due to COVID-19.[5]  30(b)(6) Dep., 276:6-25; *see* Zinck-Lederer Dep., 300:5-19.  Though the Policy has been in place for several years, when Dr. Balcezak was asked during his deposition, "is there any evidence the adoption of [the] late career practitioner policy has prevented patient harm," he responded, "I would say that is not evidence that we would be able to create."[6]  30(b)(6) Dep., 249:16-21; *see also id.*, 247:18-248:7 (only evidence that the Policy has prevented patient harm is Dr. Balcezak's "belief.").  Defendant recently adopted this admission in its Opposition to the EEOC's Motion to Compel.  *See* Dkt. No. 135 at 3.[7]

      The EEOC is developing a multitude of arguments to attack YNHH's affirmative defenses under both the ADA and ADEA, and is continuing to seek evidence to support those arguments in the Phase II discovery process, including through motions to compel and the scheduling of additional depositions.  However, despite the mid-discovery posture of this case, YNHH's admissions to date are fatal to its business necessity defense under the ADA based on the Second Circuit's binding directives in *Conroy*.  In the interest of judicial economy and the

---

[4] YNHH also did not analyze whether its practitioners aged seventy and above had worse patient outcomes, worse performance, (*id.,* 244:16-244:24), received more patient complaints, (*id.,* 243:9-243:15), engaged in more errors (*id.,* 238:8-239:1), or were responsible for more Serious Safety Events (*id.,* 243:1-243:8) compared to its younger practitioners.

[5] Dr. Leo Cooney is the one exception, as he underwent testing via Zoom during this time.

[6] Confirming this position, when asked whether there was evidence that patient harm increased when YNHH suspended its testing under the Policy during the pandemic, Ms. Zinck-Lederer testified that the "[i]nformation is not available . . . . It doesn't exist."  Zinck-Lederer Dep., 300:5-300:19.

[7] Stating that "[t]here is simply no way to accurately measure a mistake that never happened. For practitioners who were notified of potential problem areas and adjusted their practice as a result, there is not a statistic that can be culled from the Hospital's records that will show that success."

efficient resolution of the issues in this case, the EEOC therefore seeks leave of the Court to file a narrow motion for partial summary judgement on the limited undisputed facts set forth above, without prejudice to the EEOC's right to file a subsequent motion for summary judgment if warranted.

"[P]ermitting a party to file more than one summary judgment motion can, in some situations, promote judicial efficiency," as "an early decision on an important issue might resolve the entire case, narrow the issues, or even provide a foundation for settlement before the parties incur the cost of discovery on all of the other issues." 11 Moore's Federal Practice - Civil § 56.121; *see also Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) ("[A]llowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits."). This approach is appropriate here, where this narrow issue could determine the legality of YNHH's Policy, paving the way for a swift resolution without necessitating further discovery and the need for significantly more complex and extensive briefing. Further, deciding the ADA claim on this narrow issue would obviate the need for future briefing on all other elements of Defendant's affirmative defense under the ADA, including whether YNHH has a reasonable basis for concluding that the practitioners subjected to the Policy pose a genuine health or security risk, and whether the examinations are broader and more intrusive than necessary. The Court is free to grant such leave, as "district courts enjoy considerable discretion in entertaining successive dispositive motions." *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004). Further, as the motion would be based on limited facts and restricted to a specific legal issue, the EEOC would support the use of an expedited briefing schedule, to ensure this matter may be quickly submitted for the Court's consideration.

## **CONCLUSION**

For the reasons stated above, the Commission respectfully requests that the Court grant it leave to file a motion for partial summary judgment based on the facts and legal issues described above, without prejudice to its right to file a later subsequent motion.

Dated: March 3, 2022

                                                  Respectfully submitted,

s/ Caitlin D. Brown

*Attorney for Plaintiff*
Trial Attorney
Bar No. phv11110
Tel: (929) 506-5277
caitlin.brown@eeoc.gov

Kirsten Peters
Trial Attorney
Bar No. phv10940
Tel: (929) 506-5325
kirsten.peters@eeoc.gov

Kimberly A. Cruz
Supervisory Trial Attorney
Bar No. phv10827
Tel: (929) 506-5345
kimberly.cruz@eeoc.gov

U.S. Equal Employment
Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Fax: (212) 336-3623

Sonya Shao
Trial Attorney
Bar No. phv20208
Email: sonya.shao@eeoc.gov
Tel: (213) 218-5252
U.S. Equal Employment
Opportunity Commission
Los Angeles District Office

255 East Temple St., 4th Floor
Los Angeles, CA 90012